UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALISON IRENE GROSS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO.  C12-633-JCC-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Alison Irene Gross appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-five year old woman with a high school education and two years of dental hygiene classes. Administrative Record ("AR") at 41.  Her past work experience includes employment as a cashier at 7-Eleven in 2004.  AR at 50.

REPORT AND RECOMMENDATION - 1

1   On October 27, 2008, plaintiff filed a claim for SSI payments and an application for
2   DIB, alleging an onset date of May 20, 2004.  AR at 158.  Plaintiff asserts that she is disabled
3   due to degenerative disc disease, carpal tunnel syndrome, depression, anxiety, and obesity.  AR
4   at 20-21.

5   The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 74,
6   82, 86, 92.  Plaintiff requested a hearing, which took place on October 14, 2010.  AR at 37-69.
7   On December 2, 2010, the ALJ issued a decision finding plaintiff not disabled and denied
8   benefits based on her finding that plaintiff could perform her past relevant work as a cashier.
9   AR at 29.  The Appeals Council denied plaintiff's request for review, AR at 1-6, making the
10  ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. §
11  405(g). On April 26, 2012, plaintiff timely filed the present action challenging the
12  Commissioner's decision.  Dkt. 6.

13                                  II.    JURISDICTION

14  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§
15  405(g) and 1383(c)(3).

16                              III.    STANDARD OF REVIEW

17  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
18  social security benefits when the ALJ's findings are based on legal error or not supported by
19  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th
20  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is
21  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750
23  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in
24  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Gross bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On December 2, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since May 20, 2004, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; diabetes; carpal tunnel syndrome, right hand; depression; and substance abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light to sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b).

6. The claimant is capable of performing past relevant work as a cashier (DOT#915.447-010) light SVP 3.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 20-2004, through the date of this decision.

AR at 20-29.

VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ improperly rejected the opinions of the treating, examining, and reviewing physicians?

2. Whether the ALJ erred in her assessment of plaintiff's residual functional capacity?

3. Whether plaintiff met her burden of proving that she is unable to return to past relevant work?

4. Whether the ALJ erred in her conclusion that plaintiff's impairments, singly, or in combination, do not meet or equal a Listing?

5. Whether the ALJ improperly discredited the claimant's and lay witness's testimony?

6. Whether the ALJ erred by failing to obtain the testimony of a Vocational Expert?

Dkt. 20 at 1; Dkt. 21 at 2.

VII.    DISCUSSION

A.    The ALJ Erred in Evaluating the Medical Opinion Evidence

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*,

157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. *Kathy Thomas, M.D.*

The ALJ noted that plaintiff's primary care physician since approximately 2006, Kathy Thomas, M.D., of NeighborCare Health, evaluated plaintiff for disability in September 2008. AR at 27.  The ALJ noted that "Dr. Thomas reported the claimant had back pain with occasional flares of sciatica that may keep her from work or school consistently," and that plaintiff had previously reported improvement of her symptoms "with weight loss and daily exercise, but her ability to keep this up was limited at the time due to depression."  AR at 27. The ALJ noted that "it was Dr. Thomas' opinion that 'at most' she would endorse a temporary disability so the claimant could get treatment for her depression, she would have to follow-up with a mental health care provider, take her medications consistently, restart exercise regimen, and needed consistently physical therapy.  Dr. Thomas' records of February 2009 report the claimant had not done physical therapy, nor set up an appointment with a neurologist, and was not seeing a counselor."  AR at 27.  Even though Dr. Thomas considered temporary disability, the ALJ afforded "partial weight" to Dr. Thomas' opinion "because it demonstrates the claimant's primary care physician did not think the claimant was permanently limited in her ability to function by any severe impairment, the claimant failed to follow through with medical advice demonstrating a lack of motivation to improve her symptoms and continued motivation of secondary gain, and is consistent with the overall evidence of record that the claimant is not as significantly limited in her ability to function by her physical impairments as alleged."  AR at 27.

Plaintiff asserts that the ALJ erred in evaluating Dr. Thomas' opinion.  Dkt. 20 at 3 (citing AR at 503-667, 712-93, 844-61).  Specifically, plaintiff asserts that Dr. Thomas' records repeatedly referenced plaintiff's severe impairments and pain symptoms, including her November 3, 2008 note that plaintiff's "pain is intolerable and precludes normal functioning at

REPORT AND RECOMMENDATION - 8

home." *Id.* (citing AR at 712). On December 8, 2008, Dr. Thomas described plaintiff as suffering from spinal impairment at C7-T1 "abutting right nerve root with mod foraminal stenosis." *Id*. (citing AR at 743). Plaintiff contends that the ALJ failed to "address these or any of the other supportive notes of Dr. Thomas, but instead focused on two events – one in September 2008 and other February 2009." *Id.*

Specifically, plaintiff asserts that plaintiff sought treatment from Dr. Thomas in September 2008 following a lay off from work and a back injury, and she expressed a desire for retraining to go back to work. *Id.* (citing AR at 591-93). However, Dr. Thomas found that plaintiff's degenerative disc disease could "keep her from attending work or school consistently," and although her symptoms had improved with weight loss and daily exercise "her ability to keep up with this regime is limited currently given depression with slow response to medications." *Id.* (AR at 593). Dr. Thomas agreed to endorse a temporary disability of 6-12 months, but wanted plaintiff to participate in mental health treatment. AR at 593. In February 2009, when plaintiff had not lost weight or consistently obtain mental health treatment, plaintiff asserts that "Dr. Thomas made no findings that her current problems were related to these factors and there was no testimony on this point at all." *Id*. at 4 (citing AR at 791-92).

Finally, plaintiff asserts that the ALJ erred because an ALJ cannot deny an obese claimant disability benefits for not following a prescribed course of treatment to lose weight without making specific factual findings that the claimant's obesity is remediable, which the ALJ did not make in this case. *Id*. (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("Without making a factual finding, the ALJ could not assume that Dodrill's obesity was remediable."); *Orn v. Astrue*, 495 F.3d 625, 636-38 (9th Cir. 2007)). Moreover, plaintiff argues that the Ninth Circuit has recognized that mental health treatment is not easy for the

REPORT AND RECOMMENDATION - 9

poor to afford. *Id.* at 5 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (providing that although an plaintiff may have failed to seek psychiatric treatment for his mental condition, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")).

The Commissioner responds that plaintiff "is essentially arguing for a more favorable interpretation of the medical evidence. However, in such circumstances, the Ninth Circuit Court of Appeals has held, '[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.'" Dkt. 21 at 18 (citing *Batson*, 359 F.3d at 1197-98; *Burch*, 400 F.3d at 679). The Commissioner fails to specifically discuss Dr. Thomas' opinions, but asserts that "[n]one of the physicians referenced by Plaintiff offered any opinion with regard to functional limitations in excess of the ALJ's findings" with the sole exception of Dr. Fitzgerald. *Id.* at 19.

The Court finds that the ALJ's interpretation of Dr. Thomas' opinion was specific, legitimate, and supported by substantial evidence. Specifically, contrary to plaintiff's argument, the ALJ did not improperly evaluate Dr. Thomas' opinion by refusing to find plaintiff disabled because she had failed to lose weight or seek the recommended mental health treatment. Rather, the ALJ's point was that plaintiff's longtime treating physician, Dr. Thomas, "did not think the claimant was permanently limited in her ability to function by any severe impairment" in part because plaintiff had failed to comply with her recommended course of treatment. AR at 27. For example, the notes cited by the ALJ from February 2009 included Dr. Thomas' comment that plaintiff had "not [been] compliant with plan of care" to treat her "neuralgia, radiculities" by contacting "neurosurg for consult." AR at 791. The ALJ also opined that plaintiff's failure to comply with Dr. Thomas' treatment recommendations evinced "lack of motivation to improve her symptoms and continued motivation of secondary

REPORT AND RECOMMENDATION - 10

gain," which further supports the ALJ's assessment of plaintiff's credibility.  AR at 27.  In any event, the ALJ felt that Dr. Thomas' opinion was "consistent with the overall evidence of record that the claimant is not as significantly limited in her ability to function by her physical impairments as alleged."  AR at 27.

Although Dr. Thomas' opinion from September 2008 clearly reflects concern that plaintiff has "occasional flares of sciatic that may keep her from attending work or school consistently," she also noted that plaintiff reported that she "can sit all day . . . would like to go back to school or could cashier again."  AR at 591-92.  Similarly, Dr. Thomas noted that "previously, symptoms improved with weight loss and daily exercise by patient – her ability to keep up with this regimen is limited currently given depression with slow response to medications.  We discussed disability – at most, I would endorse temporary disability for ongoing back pain and DDD, complicated by depression interfering with rehab efforts."  AR at 592-93.  As the ALJ observed, Dr. Thomas' notes were very clear that she was only "endors[ing] temporary disability for 6mo-12 mos. so that patient could have adequate treatment for depression BUT she must participate with following up with mental health providers, taking meds consistently AND restart exercise regimen with weight loss."  AR at 593.  Thus, the ALJ correctly found that Dr. Thomas' notes do not evince a belief that plaintiff was permanently disabled by either her mental or physical impairments.

The ALJ also did not err by observing that plaintiff had not completed any of these activities by February 23, 2009, when Dr. Thomas noted that plaintiff "has not done PT or set up appt with neuro . . . not seeing counselor."  AR at 790.  Moreover, Dr. Thomas was "tapering Percocet due to pos tox screen in past.  Will be off narcotics from this provider for the next 12 mo for chronic issues."  AR at 790.  Contrary to plaintiff's assertion that "Dr. Thomas made no findings that her current problems were related to these factors and there was

REPORT AND RECOMMENDATION - 11

no testimony on this point at all," as noted above, Dr. Thomas commented that there had been "no change" with respect to plaintiff's neuralgia/radiculitis as plaintiff had "not [been] compliant with plan of care" and had neglected to contact "neurosurg for consult." AR at 791.

Thus, plaintiff has failed to show any error by the ALJ in evaluating Dr. Thomas' opinion. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.

### 3. Alison Fitzgerald, M.D.

On October 14, 2010, the same day as plaintiff's administrative hearing before the ALJ, plaintiff received an MRI of her lumbar spine at Northwest Hospital due to "low back pain now radiating to the left leg. Numbness in the left knee to left foot." AR at 1059. At L2-L3, the MRI findings reflected "a new large extruded disc fragment extending from the central portion of the disc into the left subarticular region/L3 lateral recess. The extruded fragment does appear to remain in communication with the parent disc . . . There is a clear impingement of the traversing left L3 nerve root." AR at 1059. In addition to the "large disc extrusion," which was "clearly impinging on at least the left L3 nerve root," the MRI impression noted "multilevel degenerative disc disease in the lower lumbar spine . . . grossly unchanged from prior MRI." AR at 1060.

On November 1, 2010, plaintiff underwent a "left L2-4 discectomy" at Swedish First Hill. AR at 1061, 1066. Immediately prior to the surgery, plaintiff's surgeon David, Hanscom, M.D., described plaintiff has "a markedly overweight woman who is extremely uncomfortable. She basically cannot sit up." AR at 1077. In relevant part, Dr. Hanscom described the procedure as a "left L2-L3 laminotomy with recess gutter decompression," "partial left L3 hemilaminectomy," and "excision of massive free fragment of disk." AR at 1066. Dr. Hanscom's findings at surgery provided that "we found a very large rupture of the

1  disk going almost down to the L3-L4 disk space.  This is what was anticipated, based on the

2  MRI scan.  The surgery was extremely difficult, due to [her] extremely large BMI, as well as

3  the fact that this was a tight level at L2-L3.  She also had a very large fragment of disk." AR at

4  1066.  However, "we were able to get an excellent decompression." AR at 1066.

5  On February 7, 2011, Alison Fitzgerald, M.D., who was apparently involved with

6  plaintiff's care during her spinal surgery and especially following her surgery, completed a

7  check-the-box form for DSHS indicating that plaintiff is "permanently" disabled.  AR at 1107.

8  Specifically, she opined that during an eight hour work day plaintiff can stand for one hour, sit

9  for eight hours, lift 2 pounds occasionally and only 1 pound frequently.  AR at 1107.  Dr.

10 Fitzgerald indicated that she had performed a physical evaluation, and noted that plaintiff

11 "states she is in too much pain to concentrate in class."  AR at 1108.

12 Plaintiff contends that Dr. Fitzgerald's opinion that plaintiff is "permanently" unable to

13 stand more than one hour in an eight hour day and lift more than two pounds occasionally and

14 one pound frequently would preclude even sedentary work.  Dkt. 20 at 6-7 (citing AR at 1092-

15 1104, 1107, 1116-19).  *See also* 20 C.F.R. § 404.1567(a)).  Plaintiff contends that "the

16 Commissioner's final decision does not address the surgery or the medical opinion letters of

17 the surgeon.  This is error." *Id.*

18 The Commissioner notes that "Dr. Fitzgerald was involved post-surgery . . . [and] filled

19 out a check-the-box form on February 7, 2011 (37 months after Plaintiff's date last insured),

20 indicating Plaintiff would be limited to less than sedentary work."  Dkt. 21 at 19 (citing AR at

21 1107, 1072, 1093).  The Commissioner acknowledges in a footnote that the court "properly

22 may consider the additional evidence presented to the Appeals Council in determining whether

23 the Commissioner's denial of benefits is supported by substantial evidence[.]" *Id*. at 19 n.6

24 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).  However, the Commissioner

REPORT AND RECOMMENDATION - 13

1  contends that "plaintiff's argument concerning this doctor opinion is without any merit.  First,
2  the doctor's opinion and the surgical records, which presumably it is based upon were not
3  before the ALJ, so he could not have reviewed them, let alone provide reasons for rejecting
4  them.  Significantly, the hearing in this matter was held on October 14, 2010, and the surgery
5  was performed on November 1, 2010, yet when the ALJ asked if there was anything else
6  pending counsel and Plaintiff indicated there was nothing else to submit." *Id.* (citing AR at
7  68).  The Commissioner argues that even if plaintiff's surgery was emergent, plaintiff has not
8  explained why she "waited 5 months to submit this evidence, or contact the ALJ to let her
9  know she was having the procedure done before the decision was issued on December 2,
10 2010." *Id.* (citing AR at 253-54).

11     Plaintiff responds that contrary to the Commissioner's argument that the records
12 pertaining to plaintiff's "urgent spine surgery shortly following the hearing" were not before
13 the ALJ for her review, "[i]n fact, the records of Ms. Gross' October 14, 2010 ER visit (which
14 occurred immediately after the hearing) and the subsequent November 1, 2010 surgery,
15 including MRI results, were filed less than two weeks following each of the procedures, on
16 October 29, 2010 and November 11, 2010." Dkt. 22 at 3 (citing AR at 1056-77).  Thus,
17 plaintiff contends that "not only did the ALJ have access to these records within two weeks of
18 the hearing and at least three weeks before issuing her December 2, 2010 unfavorable decision,
19 but the unfavorable decision specifically references both reports within the list of exhibits." *Id*.
20 (citing AR at 34 (citing Exhibits 29F and 30F).  Plaintiff asserts that "the ALJ's failure to even
21 discuss what weight was given to these records remains an error requiring reversal." *Id.*

22     Plaintiff is correct.  The ALJ did not address plaintiff's November 1, 2010 spinal
23 surgery, or Dr. Fitzgerald's February 7, 2011 opinion, although these records are included in
24 the "List of Exhibits" attached to her written decision.  AR at 34.  In fact, the ALJ's discussion

REPORT AND RECOMMENDATION - 14

of plaintiff's degenerative disc disease as well as the MRIs of plaintiff's spine suggests that the ALJ was not aware of plaintiff's surgery. AR at 20. In concluding that objective medical evidence did not support "the alleged severity and limiting effects of the claimant's physical impairments," the ALJ relied upon two MRI's of plaintiff's lumbar spine taken in 2008 and 2010. The ALJ acknowledged the most recent MRI of plaintiff's lumbar spine, which "indicated a large disc extrusion arising from the L2-3 disc space extending into the left L3 lateral recess and impinging on the L3 nerve root, and multilevel degenerative disc disease." AR at 25 (citing AR at 1060). However, the ALJ incorrectly stated that this "lumbar MRI was taken on August 14, 2010," days before an August 17, 2010 examination in which plaintiff "had no tenderness to palpation of the back, normal range of motion of the lower extremities, no motor or sensory deficits, and the claimant had a steady gait." AR at 25. As mentioned above, this MRI was actually taken on October 14, 2010, AR at 1060, the same day as the administrative hearing, and was followed up with surgery on November 1, 2010, AR at 1061-77. Although it does appear that the ALJ received the records regarding plaintiff's surgery and Dr. Fitzgerald's subsequent opinion regarding plaintiff's abilities before drafting his written decision, the ALJ does not mention them.[2]

Even if the ALJ did not receive these records in a timely fashion, the Ninth Circuit Court of Appeals recently held that when the Appeals Council accepts additional medical reports, which were unavailable to the ALJ at the time of the administrative hearing, the evidence is incorporated into the administrative record for review by the district courts. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159 (9th Cir. 2012). In *Brewes*, the Ninth Circuit considered additional evidence submitted to the Appeals Council after the ALJ's

---

[2] Similarly, the ALJ did not discuss the impact of plaintiff's spinal surgery in her discussion of whether plaintiff's "back and neck impairment" meets listing 1.04 for disorders of the spine. AR at 21.

REPORT AND RECOMMENDATION - 15

decision pursuant to sentence four of 42 U.S.C. § 405(g). *See id.* at 1161-63. The *Brewes* court held that evidence submitted to the Appeals Council is not considered "new evidence," but rather is part of the administrative record properly before the district court. *See id.* at 1164. Thus, even if the evidence regarding plaintiff's spinal surgery and Dr. Fitzgerald's February 2011 opinion that plaintiff is "permanently disabled" were submitted after the ALJ drafted his written decision, they are part of the administrative record before this Court. In light of the ALJ's failure to discuss this evidence, the Court cannot find that substantial evidence clearly to supports the ALJ's decision.

Accordingly, this case must be REMANDED for further administrative proceedings. On remand, the ALJ shall re-evaluate the medical evidence of record, including Dr. Fitzgerald's opinion and any evidence pertaining to plaintiff's spinal surgery. Because the plaintiff's remaining assignments of error, including the ALJ's assessment of plaintiff's credibility, are inextricably intertwined with the ALJ's evaluation of the medical evidence, it is unnecessary for this Court to resolve them at this time.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 10th day of January, 2013.

JAMES P. DONOHUE
United States Magistrate Judge